[Cite as *In re J.C.H.*, 2019-Ohio-4542.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MONROE COUNTY

IN THE MATTER OF:

J.C.H., JR., J.C.H. AND J.G.H.,

MINOR CHILDREN.

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 MO 0021**

Civil Appeal from the
Court of Common Pleas, Juvenile Division, of Monroe County, Ohio
Case No. 4867

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, Carol Ann Robb, Judges.

**JUDGMENT:**
Affirmed.

*Atty. Rhonda G. Santha*, 6401 State Route 534,West Farmington, Ohio 44491, for
Appellant

*Atty. William E. Frank Jr.*, Monroe County Department of Job and Family Services, 100
Home Avenue, Room 150, Woodsfield, Ohio 43793, for Appellee.

Dated: November 4, 2019

**WAITE, P.J.**

{¶1} Appellant-father, J.H., challenges the August 7, 2018 judgment of the Monroe County Common Pleas Court, Juvenile Division, finding him guilty of a third offense of willful contempt and ordering him to serve ninety (90) days in jail. Monroe County Child Support Enforcement Agency ("MCCSEA") is the Appellee in this action. MCCSEA filed the motion seeking a third offense of contempt against Appellant who had an arrearage of over $30,000 in child support. Appellant paid only $740 in total over the duration of the child support order. Appellant contends MCCSEA failed to present proof beyond a reasonable doubt that Appellant willfully and intentionally committed criminal contempt for nonpayment of child support. For the reasons expressed below, Appellant's argument lacks merit and the judgment of the trial court is affirmed.

Factual and Procedural History

{¶2} Appellant and the children's mother, T.C., had three children during their relationship, all of whom are still minors: J.C.H., Jr., (d.o.b. 10/3/01); J.C.H., (d.o.b. 12/4/03); and J.G.H., (d.o.b. 1/16/08). Each of the children have resided with T.C. since birth. T.C. is not a party in this action.

{¶3} On March 29, 2012, MCCSEA filed a motion to enforce child support, provision of health insurance, and other relief against Appellant for the three children. At the time of filing Appellant was $4,565.33 in arrears on his child support obligation. A hearing was held on November 8, 2012. The trial court ordered Appellant to pay child support in the amount of $406.89 per month. The order was effective November 16, 2011, pursuant to the existing MCCSEA administrative support order. Appellant was also ordered to pay a lump sum judgment of $4,565.33 towards the arrearage in the form of an additional monthly payment of $81.38 per month, effective October 31, 2012. The

court also ordered Appellant to seek work and complete weekly seek-work reports with MCCSEA.

{¶4} On December 1, 2015, MCCSEA filed a motion seeking for Appellant to show cause why he should not be held in willful contempt for failing to pay child support. Counsel was appointed to represent Appellant. After a full evidentiary hearing on the matter, on March 10, 2015 the trial court issued a judgment entry finding Appellant guilty of a first offense of willful contempt, in violation of R.C. 2705.05(A)(1). The court concluded Appellant had (1) failed to make any child support payments; (2) never appealed the November 30, 2012 order; (3) never requested an administrative review of the child support obligation; (4) did not report any efforts undertaken to find employment or notify MCCSEA of efforts to seek work; and (5) presented no evidence he was employed, other than testifying that he earned $2,100 in 2014 which was never reported to MCCSEA.

{¶5} Appellant was ordered to serve fifteen (15) days in jail. This sentence was suspended and could be purged if Appellant complied with the following: (1) pay $415.03 as the ongoing child support obligation; (2) pay an additional monthly payment of $83.01 towards the arrearage; and (3) apply for and pay to MCCSEA any and all income tax refunds, which would be applied to the arrearage. MCCSEA was ordered to report to the court in writing of Appellant's efforts to purge the contempt by May 27, 2015. The trial court would then review the matter and schedule further proceedings if needed. Appellant was also ordered to seek work by making at least five contacts per week; participate in work activity for at least 32 hours per week; or provide evidence from a licensed physician that he is unable to work in any capacity. The physician's notice was required to be

renewed and provided to MCCSEA every three months. Appellant was also ordered to train with a case manager at the JOBS one-stop office to find employment.

{¶6}   On May 23, 2017, MCCSEA filed another motion asking the court to find a third offense contempt against Appellant pursuant to R.C. 2705.05(A)(3). In this motion, MCCSEA sought a lump sum judgment with interest; a structure for repayment of the arrearage; health insurance for the minor children, and a seek-work order, along with other relief. Appellant's arrearage had now increased to $27,023.24 with no regular child support payments or seek-work reports filed. Counsel was again appointed for Appellant. An evidentiary hearing was set for June 20, 2017. On this date, Appellant's counsel filed a demand for discovery, requesting copies of all evidence to be presented at the hearing, including statements of Appellant, all related documents, witness statements, and witness names and addresses. On July 11, 2017, Appellant filed a motion requesting the trial court recuse from the matter, citing as a basis, "a conflict of interest that involves case history in the Monroe County Court." (7/11/17 Motion, p. 1.) Appellant alleged that although he did not have an actual claim of bias or impropriety, a mere appearance of such impropriety may exist and that the trial court judge may no longer be able to be "detached or neutral." (7/11/17 Motion, p. 2.) The trial court overruled Appellant's motion for recusal for failure to set forth specific facts indicating recusal was warranted.

{¶7}   On July 26, 2017, Appellant's counsel filed a letter with the court written by Appellant's attorney handling his Social Security disability claim. It stated that Appellant had filed a hearing request on his disability claim and was waiting for it to be scheduled. The hearing was reset for August 1, 2017.

Case No. 18 MO 0021

{¶8} On August 30, 2017, Appellant's counsel filed a notice with the trial court that Appellant was currently serving a four to six month jail sentence for charges originating in Monroe County Common Pleas Court. MCCSEA informed the trial court that, after researching the matter, Appellant would be incarcerated until February 13, 2018. The trial court ordered Appellant to contact MCCSEA within five days of release from incarceration, and that the evidentiary hearing would be continued until February 13, 2018.

{¶9} On February 23, 2018, the trial court issued a judgment entry finding that Appellant remained incarcerated. The evidentiary hearing was continued until April 24, 2018.

{¶10} On April 20, 2018, Appellant's counsel filed another notice with the trial court and another letter from Appellant's Social Security disability attorney stating that Appellant was still awaiting a hearing on his February 2017 request for Social Security benefits. The trial court continued the matter until May 8, 2018. Appellant was ordered to submit all medical information related to his Social Security disability claim and his inability to work by May 4, 2018. On May 4, 2018 Appellant's counsel submitted the same letter from Appellant's Social Security attorney and a note from Dr. Charles J. DeNunzio, Jr., D.O. stating that Appellant was seen on April 3, 2018 and that Appellant had work restrictions, specifically, that he was "unable to return to work at this time due to heart condition."

{¶11} On July 17, 2018 the trial court issued a judgment entry. In it, the court recounted the parties had reached an interim agreement that restrained Appellant from cashing or converting any payments received from the Social Security Administration and

requiring Appellant to share all of his medical information with MCCSEA, but that Appellant ultimately refused to sign the agreement. The evidentiary hearing in his contempt action was again continued to July 31, 2018. Appellant filed a motion for new counsel which was denied.

{¶12} The matter finally came on for hearing on July 31, 2018. MCCSEA had originally filed the contempt motion on May 23, 2017. Appellant was present with court appointed counsel. The case manager for MCCSEA, Kara Stimpert ("Stimpert"), was present along with counsel for MCCSEA. Stimpert and Appellant both provided testimony at the hearing.

{¶13} Stimpert testified that as of the date of the hearing Appellant's total arrearage was $32,156.58 and that Appellant had only paid a total of $740 since the order was originally entered in 2012. She testified that the current monthly payment was based on an imputed, full-time minimum wage income. Stimpert also testified that MCCSEA has cooperated with Appellant's pursuit of Social Security disability benefits by agreeing to multiple continuances. Stimpert said Appellant had presented medical records to MCCSEA, including the note from Dr. DeNunzio as well as a letter dated July 13, 2018 from Dr. Walid Gharib indicating Appellant has four heart conditions: cardiomyopathy, congestive heart failure, tachycardia and palpitations. (7/31/18 Tr., pp. 8-10.) Dr. Gharib noted that Appellant continued to use tobacco, and his other medical records reflect Appellant had problems with weight loss, tobacco abuse, alcohol abuse, drug abuse, and pain management medicine. (7/31/18 Tr., pp. 11-12.) Stimpert testified that Appellant informed his doctor he has smoked a pack of cigarettes a day for "twenty plus years" and that he had been told to quit smoking. (7/31/18 Tr., p. 14.)

Case No. 18 MO 0021

{¶14} Appellee's counsel presented Stimpert with an online article marked as CSEA Exhibit 2. The article detailed the cost of one pack of cigarettes per day in all 50 states. Reading from the article with no objection from Appellant's counsel, Stimpert testified that smoking a pack a day for twenty years would cost $39,639 in West Virginia, $44,019 in Ohio and $50,000 in Pennsylvania. Lastly, Stimpert testified that Appellant had not filed any seek-work reports with MCCSEA since the third contempt motion was filed in May of 2017.

{¶15} On cross-examination Stimpert acknowledged that the article regarding the cost of smoking referred to purchasing cigarettes and not the cost associated with rolling tobacco cigarettes at home, which Appellant did. At the end of Stimpert's testimony, counsel for Appellee moved for the submission of all exhibits, including Appellant's medical records and the article relative to the cost of smoking. All were admitted without objection from counsel.

{¶16} On direct examination Appellant testified that he had applied for Social Security disability benefits on his own without counsel and was initially denied, but had requested a hearing which was not yet scheduled. He testified that along with his heart issues, he had back pain, and that he saw a counselor twice a month "for my other issues, Bipolar, anxiety, and just life." (7/31/18 Tr., p. 30.) Appellant stated he continues to regularly see his heart specialist and his wife forwards all records to his disability attorney. He testified that his wife is currently on disability, which is their sole source of income. (7/31/18 Tr., pp. 35-36.) Appellant's counsel presented a handwritten list of Appellant's monthly expenses written by Appellant's wife. Appellant testified he was a long-time smoker but saves money rolling his own cigarettes. (7/31/18 Tr., p. 36.)

**{¶17}** On cross-examination Appellant was asked if his tobacco expenses were on his monthly list and he stated they were not. He also testified that he had never been in a smoking cessation program. He testified that he had no income and no assets at all stating, "I have nothing." (7/31/18 Tr., p. 50.) Appellee's counsel handed Appellant a document, marked as plaintiff's exhibit 3, which was a screen shot of Appellant's social media page where Appellant had a Honda ATV listed for sale for $1,200. When asked by counsel about the item for sale, Appellant testified "[w]ell, I mean, I guess I do own something then." (7/31/18 Tr., p. 52.) Finally, Appellant testified that he had recently been incarcerated for criminal drug charges after pleading guilty, as the police had found "[a] white powdery substance" in his house. (7/31/18 Tr., p. 53.)

**{¶18}** On August 7, 2018, the trial court issued a judgment entry in the matter, finding: (1) Appellant has an accrued arrearage of over $30,000 and paid a total of only $740.00; (2) Appellant claims no income but smokes one pack per day of cigarettes; (3) evidence submitted by MCCSEA shows that the cost of smoking a pack a day would cost an amount "in far excess of the amount of child support [Appellant] has actually paid on behalf of his children over the years;" (4) Appellant was a "liar in court" when he denied owning any assets until confronted with evidence that he was selling an ATV for over a thousand dollars; (5) Appellant never filed seek-work reports with MCCSEA; and (6) while Appellant claims he is disabled, he has been denied Social Security disability benefits. (8/7/18 J.E.)

**{¶19}** The trial court found Appellant guilty of a third offense of willful contempt and ordered him serve 90 days in Monroe County jail.

**{¶20}** Appellant filed this timely appeal.

## ASSIGNMENT OF ERROR

APPELLEE, MONROE COUNTY CHILD SUPPORT ENFORCEMENT AGENCY, FAILED TO PRESENT PROOF BEYOND A REASONABLE DOUBT THAT APPELLANT WILLFULLY AND INTENTIONALLY COMMITTED CRIMINAL CONTEMPT FOR NONPAYMENT OF CHILD SUPPORT.

**{¶21}** In his assignment of error Appellant contends he was convicted of criminal contempt and that MCCSEA failed to present proof beyond a reasonable doubt to support the trial court's finding of contempt.

**{¶22}** Pursuant to R.C. 2705.031(B)(1), "[a]ny party who has a legal claim to any support ordered for a child, spouse, or former spouse may initiate a contempt action for failure to pay the support." An action for civil contempt is a violation against the party who was to benefit from the court order. *The Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd.*, 141 Ohio St.3d 107, 2014-Ohio-4254, 22 N.E.3d 1035, ¶ 15-16. Civil contempt can have sanctions, the purpose of which is to provide a remedy or to ensure compliance with a court order or to compensate the other party for losses. *Id.* Further, civil contempt provides an opportunity for the contemnor to purge a sanction. *Id.* The contempt maintains its civil status even if the contemnor fails to meet the purge conditions and is sentenced to jail. *Liming v. Damos,* 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 14-18.

**{¶23}** At a hearing regarding contempt, the alleged contemnor is provided the opportunity to defend the allegation and can appeal the contempt finding and any purge

conditions set forth by the trial court. *The Docks Venture,* ¶ 20-23. The contemnor carries the burden of proving the defense of inability to pay throughout the trial court proceedings. *Liming,* at ¶ 30. Moreover, even if the contemnor proves the inability to pay the full amount, the obligation to pay a lesser amount remains. *McCree v. McCree,* 7th Dist. Mahoning No. 08 MA 109, 2009-Ohio-2639, ¶ 18.

{¶24} Appellant was found guilty of a third offense of contempt for failure to pay support pursuant to R.C. 2705.05(A)(3):

(A) In all contempt proceedings, the court shall conduct a hearing. At the hearing, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge. If the accused is found guilty, the court may impose any of the following penalties:

* * *

(3) For a third or subsequent offense, a fine of not more than one thousand dollars, a definite term of imprisonment of not more than ninety days in jail, or both.

{¶25} A trial court's finding of contempt will not be reversed absent an abuse of discretion. *State ex rel. Celebrezze v. Gibbs,* 60 Ohio St.3d 69, 75, 573 N.E.2d 62 (1991). An abuse of discretion connotes more than an error of judgment; it implies an attitude that is "unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "When applying the abuse of discretion standard, a

Case No. 18 MO 0021

reviewing court is not free to merely substitute its judgment for that of the trial court." *In re Jane Doe 1,* 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991).

**{¶26}** Appellant contests his contempt finding by contending the action was criminal, not civil, in nature. Citing *Liming,* Appellant asserts that he should have been afforded the same constitutional safeguards as in a criminal trial and that the burden was on MCCSEA to prove that he willfully and intentionally committed criminal contempt beyond a reasonable doubt. Appellant's assertion that this was a criminal contempt proceeding and his reliance on *Liming* is misguided. In *Liming,* the Ohio Supreme Court held that all actions for contempt involve some sort of sanction or punishment for the contemnor, with the distinction being what purpose is to be served by the sanction. *Id.* at ¶ 12. If the sanction is one that is remedial or coercive and is intended to benefit the complainant it is generally classified as civil contempt. *Id.* R.C. 2705.05, the statute under which this action was brought, specifically sets forth that an action brought pursuant to its terms is civil in nature. The statute sets forth a number of possible sanctions, including a possible jail sentence. Even if there is an opportunity to purge the contempt finding and the contemnor fails to do so, resulting in a jail sentence, the contempt remains civil in nature. *Id.* at ¶ 14-18. Thus, it is clear that the contempt action at issue is civil in nature.

**{¶27}** Appellant's original child support order was issued in 2012. Appellant never appealed that order or sought any administrative review of his support obligation with MCCSEA. This was MCCSEA's third contempt filing against Appellant. Appellant's response throughout all of these proceedings has been inaction. He failed to appeal any of the prior findings by the trial court or seek an administrative review of the child support

calculation from MCCSEA.  In each of the contempt orders the trial court provided purge conditions for Appellant to cure the contempt.  Each time Appellant chose to disregard the opportunity to purge, leading to a subsequent contempt filing by MCCSEA.  In the current contempt action, multiple continuances were granted at Appellant's request as he sought Social Security benefits and served jail time for drug offenses.  The matter finally came on for a hearing over a year after it was filed.  At that time, it was established that Appellant had an arrearage of over $30,000 and that he had only paid $740 in the intervening years.  As part of the evidence in this case, MCCSEA presented an online article regarding the cost of cigarettes over a twenty year time period, which was admitted with no objection by Appellant's counsel.  Despite Appellant's explanation that he rolled his own cigarettes, undisputed evidence existed that the cost of his smoking habit far exceeded the amount Appellant had ever paid in support of his children.  Finally, Appellant testified that he owned no assets that could be sold to help pay his support, but was forced to admit this was false after counsel submitted his social media post from two weeks earlier offering an ATV for sale for $1,200.  The burden of demonstrating the defense of inability to pay support remained with Appellant throughout these proceedings.  Appellant did not successfully prove his inability to pay nor did he take advantage of any opportunities to purge the contempt or appeal the earlier contempt findings.  Based on the foregoing, the trial court did not abuse its discretion in imposing the jail sentence on Appellant.  Appellant's assignment of error is without merit and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Robb, J., concurs.


Case No. 18 MO 0021

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division, of Monroe County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**